## PAROL EVIDENCE IN EXPLANATION OF INCOMPLETE WRITTEN CONTRACT.

[Circuit Court of Lorain County.]

PETER KNEIPPER v. ANTON RICHARDS ET AL.

Decided, April 29, 1904.

*Contract—In Writing but Incomplete—Parol Evidence in Explanation of—Measure of Damages—Verdict—Court Should Direct for Failure of Proof, When.*

1. Where a petition in an action for breach of contract does not allege a complete written agreement as the basis of the action, but an ambiguous memorandum agreement is attached to the petition, it is error to excude evidence that the parties did agree upon a contract which was fully understood between them, and that the plaintiff was ready and willing to perform his part, but was not permitted to do so.
2. A plaintiff does not lose his right to damages by reason of failure to offer evidence as to the loss he has sustained, where by a ruling of the court he has been deprived of the testimony necessary to make out his case; and a court is not authorized under such circumstances to direct a verdict for the defendant.

HALE (orally); MARVIN, J., and WINCH, J., concur.

Error to Lorain Common Pleas Court.

In the case of Peter Kneipper against Anton Richards and Mary Richards, proceedings in error are prosecuted in this court to reverse the judgment of the court of common pleas. The plaintiff in error was plaintiff below. The action was commenced before a justice of the peace, and an appeal taken from the judgment of the justice to the court of common pleas.

The plaintiff in his petition states his cause of action thus:

"For his cause of action against said defendants, plaintiff states that on or about March 21, 1901, the said defendants, who were and still are husband and wife and residing in said Avon township, duly entered into a certain contract with plaintiff, whereby he was hired and employed for the sum of $85 to perform a particular job of work and labor in constructing a certain alteration 'upon the premises of said defendant, Mary Richards, located in said township. Said contract provided that

within ninety days from the date thereof, said plaintiff was to raise the house on said premises two feet, and to construct and build a cellar thereunder twelve feet wide, fourteen feet long and six feet deep; for which work said defendants agreed and promised to pay plaintiff the sum of $85. In consideration whereof said plaintiff promised and agreed to do said work and to complete the same within said ninety days. A true copy of a memorandum of said contract, signed by said Anton Richards and Peter Kneipper, is attached to this petition, and filed herewith, and marked Exhibit "A."

The petition then alleges that Mr. Kneipper, the plaintiff, was prevented from performing his contract; that he was notified by the defendants that they had employed another to raise the house, and he would not be permitted to do the work. He alleges that by that breach of the contract on the part of the defendants he was injured in he sum of $85, for which he asks a judgment.

Separate answers were interposed by the defendants. Anton Richards' answer is: First, a general denial; second, that he was induced by certain fraudulent representations made on the part of Kneipper to enter into this contract. Those relate to the fact that a contract had been made with a man by the name of Reid to do this work, and Kneipper represented to him that Reid was unskilled in that kind of work and could not do it, and certain other falsehoods stated to him by Kneipper, and among other things, as a third defense, he says, that he is in the habit of becoming intoxicated, which was known by Kneipper, and that Kneipper got him into a saloon; got him drunk and induced him to sign this contract while he was irresponsible.

The answer of Mary Richards is a general denial, with the further statement that she owned the property, as it is conceded she did, and had entered into a contract with a man by the name of Reid to do the work upon the house prior to the time that Anton entered into this contract with Kneipper, and that all that Anton did in the matter, if he did anything, was upon his own responsibility and without any authority from her, she having provided for the work prior to that time.

There is a reply to this new matter in the answer, and the case came on for trial before the court of common pleas. The plaintiff introduced what evidence he was permitted to introduce,

and at the close of his testimony, on motion, a verdict was directed for the defendants' and against the plaintiff. A motion for a new trial was made and overruled. The questions made here grow out of the rulings of the court made upon the introduction of testimony, either in excluding or admitting testimony, mainly in excluding testimony, and also in granting the motion directing a verdict for the defendants, and in overruling the motion for a new trial.

It will be noted that the action is against Anton Richards and Mary Richards, who are husband and wife; that Mrs. Richards was the owner of the premises upon which this work was to be done. Anton was called in his own behalf as a witness, and after stating his business and where he resided, etc., he stated that on March 21, 1901, he met Kneipper in a saloon in Avon, and that there they entered into a contract. After giving certain conversation had between them, a memorandum signed at that time by Anton Richards and Peter Kneipper was produced and offered in evidence. It is the memorandum referred to in the petition, and attached to it. That memorandum reads as follows:

"Raise house two feet. Cellar twelve by fourteen under-pinning under the rest. Stone, lime and sand furnished by A. Richards. Window and door frames all complete. To be done ninety days after date. $85.

"Anton Richards.<br>"Peter Kneipper."

Then follows a series of questions to which objections were made, and answers excluded and exceptions taken. It will be noted from this memorandum that it does not purport to be a contract in any form binding Mrs. Richards. It is only signed by Anton Richards and Peter Kneipper. It will be further noted that this memorandum if it is to be treated as a contract, fails to state an entire contract between anybody, it clearly is ambiguous and incomplete. By the petition a complete contract is alleged between the parties, but it is not alleged that that complete contract was in writing.

"Q. Now Mr. Kneipper, I see that does not state what house is to be raised, etc., what is to be done with that, what it refers

to; won't you tell what was said between you and Richards in that conversation?'' (Objected to by counsel for defendants.)

Counsel for defendants say: ''I object to any evidence that would in any way change that contract.''

''By the Court.  Does this express the true contract between the parties?

''By Mr. Leonard.  It expresses so far as it goes the true contract between the parties, but it has left out a good deal.  It is just a skeleton of the contract, and the trouble is, it does not go on and show definitely.  I want to show this, that the plaintiff agreed to raise that house two feet, and excavate and do the stone work for a cellar twelve by fourteen, and to do it inside of ninety days; Richards to furnish the stone, lime and sand and the window frames, and that Richards agreed to pay him $85 therefor.  That is what I desire to show, and if that contract shows that, it is all we need.''

Manifestly the contract did not show it.  Objection sustained by the court; counsel for plaintiff then and there excepted.  The court did not permit the plaintiff to show that the contract referred to a certain house located in Avon, occupied by these defendants.

''Q.  Was there anything said between you and Richards at that time about what house should be raised?'' (Objected to by counsel for defendants.)

''Q.  Yes or no?  A.  Yes, sir.

''Q.  What was said by Richards on the subject of what house should be raised?  A.  What he was living in.'' (Counsel for defendants objected to the answer, and asked to have the answer excluded.)

The court then following his former holding said: ''Answer excluded by the court.''

Upon what ground he did so it is impossible for us to tell. We think it was most clearly competent.

''Q.  Was there anything said on the subject of who would raise the house?'' (Objected to by counsel for defendants.)

''Q.  Yes or no.'' (Objection sustained.)

''Q.  Was there anything said on the subject of who would raise the house, yes or no?'' (That is repeated and objection again sustained, and exception by plaintiff.)

"Q. Was there anything said on the subject of how deep the cellar should be, yes or no?" (Objected to by counsel for defendants; objection sustained.)

"A. Yes." (Excepted by plaintiff; answer excluded by the court.)

It will be noticed that this memorandum says a cellar twelve by fourteen, but gives nothing as to the depth of the cellar, entirely silent, and yet the court excluded that evidence.

"Q. Was there anything said on the subject of who should pay the $85, yes or no?"

(Objected to by counsel for defendants; objection sustained, exception by plaintiff.)

At the bottom of this contract were the figures "85" with a dollar sign; that is all the reference there is to the $85 in the memorandum. Yet the court says, if that means anything, you are entitled to it, and if it don't you can not fix it.

"Q. Was anything said on the subject of who the $85 shoul'l be paid to?" (Objected to by counsel for defendants; objection sustained; exception by plaintiff.)

"Q. Was there anything said on the subject of who should put in the underpinning and build the cellar wall, yes or no? Was anything said on the subject?" (Objected to by counsel for defendants; objection sustained; exception by plaintiff.)

"Q. Now, I will ask you, Mr. Kneipper, whether the defendants, Mary Richards and Anton Richards, lived together in a house down there in Avon? A. Yes, sir.

"Q. And I will ask you whether they did put a cellar under that house in the spring of 1901, or any part of it? A. Yes, sir."

Then evidence was offered tending to show the agency of Anton Richards for Mary Richards in making the contract. That counsel may not be misled, we do not hold the evidence offered was the best evidence that could have been offered upon that subject or that it was in all respects competent.

Again, counsel sought to show conversations after the making of this contract between Kneipper and Anton, and also between Kneipper and Mrs. Richards, whereby they repudiated the contract and notified him distinctly that he would not be permitted to perform the contract. He was asked, if after the con-

tract was made he had a conversation with Richards, and he said he did, and was then asked what that conversation was, an objection was interposed, and the objection sustained and exception by the plaintiff. Counsel for plaintiff said:

"I will offer to prove by the witness, that at the time of the conversation referred to, the defendant, Anton Richards, met the plaintiff and told him that one Blazer Reid wanted to build the cellar, and that Blazer Reid was claiming he had a contract to build it, and he asked the plaintiff to let him off upon the contract. The plaintiff told him that he could not afford to do so; that he, the plaintiff, had thrown up several jobs which had been offered him in the meantime, and was calculating upon building the cellar, and that the defendant, Anton Richards, thereupon told him that he would have to buy off and arrange with either him or Reid."

Then he was asked further as to what was said in the conversation about being permitted to complete his contract, to which an objection was interposed and sustained; and the offer to prove was:

"We offer to prove by the witness, that in the conversation referred to, the defendant, Anton Richards, told the plaintiff that he could not go on and perform the contract and build the cellar and put in the underpinning; that they had hired Blazer Reid to do it for $20 less, and that they should give him the job."

We do not understand upon what ground that evidence was excluded. If Kneipper had a contract to do this work, was ready and willing to do it, and did not do it because he was notified he would not be permitted to do so, that testimony was competent.

Again, he met Mrs. Richards, and he was asked as to the conversation he had with her upon the subject of being allowed to complete that contract, to which an objection was made and an exception taken. This was the offer:

"We offer to prove by the witness that at the time referred to Mrs. Richards, the defendant, said to the plaintiff, you can not go on and complete the contract for building the cellar that my husband made with you, as we have concluded not to

put in a cellar under our house. Mr. Richards does not like to live in French Creek, and we expect to go away and not live there, and so we will not have the cellar dug.''

Then there was a repetition of questions put to the witness as to what was said and done at French Creek at the time the contract was made, and a more complete statement made of the proof that was expected to be made and elicited by such questions.

As near as we can gather from the remarks and the objections made, all this testimony was excluded upon the theory that the evidence tended to vary the written contract, a memorandum of which was attached to the petition and offered in evidence. That position was not well taken. The memorandum offered in evidence did not purport to be a complete contract; it made no reference to the $85, when it was to be paid, or how it was to be paid; nothing said about the depth of the cellar. It is entirely incomplete. It does not purport to be a contract binding Mrs. Richards; and if it be true, that before that memorandum was made these parties did enter into a contract or come to an agreement as specified in the petition, agreeing fully upon the terms of the contract, the size of the cellar, and depth, amount to be paid and when to be paid and all of the terms of the contract, and then made this memorandum that was signed only by Kneipper and Anton, then we think the contract was so incomplete and so ambiguous that the plaintiff should have been permitted to show that the real contract was as he had alleged it to be, if he could. It was clearly error in excluding that evidence.

Again, it is said the court erred in excluding evidence offered as to the damages sustained, and the particular question upon that subject is this:

''Q. If you had been allowed to go on and perform this contract, how much would you have made that you otherwise were not able to make?''

That question is clearly incompetent; the court ruled rightly in excluding it. The measure of damages there suggested is not the true measure of damages. But as this case has not reached that point it seems any discussion of what the true measure

of damages would be, would be outside of the case that is made.

I should say the contract price would fix the benefits the plaintiff was to get out of it, from which should be deducted the cost of completing the work he agreed to do—the reasonable cost. But nothing is said here that shall bind the trial court on another trial of the case as to the measure of damages.

Other evidence was introduced on the part of the plaintiff, and at the close of plaintiff's case there is this entry:

"Whereupon the defendant moved the court to direct a verdict in favor of the defendants, on the ground that there was no evidence tending to sustain the claim of the plaintiff. Which motion the court sustained, and directed the jury to return a verdict in favor of the defendants, to which the plaintiff then and there excepted. Whereupon the jury retired, etc., and returned a verdict."

The decision of the court of common pleas is with the files, which we have examined. It seems to have been based upon the theory that the action was upon the written contract only, and, therefore, the evidence that was excluded was incompetent, because it tended to vary that written contract. But the court finally held that the written memorandum constituted no contract, and therefore the plaintiff had made no case.

The trial of this case resulted in exactly this situation—excluding the evidence offered because it tended to vary the written memorandum, and then holding that the plaintiff had no case because there was no evidence tending to establish his claim. Clearly this is illogical and not right.

The action by the petition is not based upon a written contract; it does not so specify; it does not allege a contract complete in its form. There was a memorandum incomplete, made and signed by the party upon one side and one of the parties upon the other, and we think it was left open to establish fully what that contract was, and that the evidence offered should not have been excluded upon the ground it tended to vary a written memorandum, which was finally held not to be a contract.

The judgment of the court of common pleas must be reversed and the cause remanded for a new trial. The grounds of reversal may be the exclusion of the testimony offered to which I have referred.

Now again, it is stated that there was no legitimate evidence of any damages sustained by the plaintiff, and, therefore, the court was right in directing a verdict.

Under the situation of this trial we do not think that should prevail. The plaintiff had been deprived of testimony to which he was entitled, and without which he could not make a case, and hence he should not be held to have lost all his rights by not offering evidence in support of damages upon the case he had been deprived of making. So that we do not think the court would be justified in directing a verdict solely upon the ground that no legitimate evidence had been offered of the damages sustained by the plaintiff.

*Fritz Rudin* and *Johnson & Leonard*, for plaintiff in error.

*Thompson & Glitsch*, for defendants in error.